T.C. Memo. 2003-170

UNITED STATES TAX COURT

CATHY M. AND RANDY L. CROSSON, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10101-01.                    Filed June 10, 2003.

Cathy M. and Randy L. Crosson, pro sese.

<u>Thomas D. Yang</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GERBER, <u>Judge</u>:  Respondent determined a $13,339 Federal
income tax deficiency and a $2,667.80 penalty under section
6662(a)[1] for petitioners' 1999 taxable year.  The issues for our
consideration are:  (1) Whether petitioners have shown their

_____

    [1] Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect for the taxable year at
issue.

entitlement to certain business deductions; (2) whether petitioners are entitled to claim a bad debt loss; and (3) whether petitioners are liable for an accuracy-related penalty.

FINDINGS OF FACT

At all times pertinent to this case, petitioners were married and resided in Clarendon Hills, Illinois. Petitioners filed a joint 1999 Federal income tax return, which they prepared themselves. On that return, they reported $85,355 in wages and $461 in interest income. They also claimed $81,289 as a business loss. That loss was shown on a Schedule C, Profit or Loss from Business. Randy L. Crosson (petitioner) was reflected on the Schedule C as a "Special Trade Contractor" who operated the business on the cash method for reported income and deductions. No income was reported on the Schedule C, and the claimed $81,289 loss comprised $58,067 in bad debts, $12,374 in car and truck expenses, and the remainder in various expense categories, as follows: $420 in legal and professional services, $116 in office expenses, $299 in vehicle or equipment rent, $357 in supplies, $1,655 in taxes and licenses, $312 in travel, $2,018 in meals and entertainment, $4,046 in utilities, and $1,625 in other expenses.

Petitioners did not itemize deductions on the Schedule A, Itemized Deductions; instead, they used the standard deduction. The wages and the claimed loss coupled with the standard

deduction and exemptions resulted in no taxable income reflected on petitioners' 1999 return.

Petitioners claimed that the bad-debt loss resulted from thefts of equipment and unpaid obligations of clients, which were evidenced by several proofs of claim filed in a debtor's bankruptcy during 1995. During the early 1990s, petitioner was a subcontractor who installed fire protection systems under the name "Industrial Fire Protection, Inc.".

Police reports dated November 9, 1990, and November 10, 1994, contained petitioner's allegations that certain of his equipment had been stolen from jobsites.

Duane O'Malley was petitioner's debtor, and petitioner filed various claims in Mr. O'Malley and his wife's joint bankruptcy proceedings. Petitioner's claims included claims for unpaid services rendered by petitioner and claims resulting from six legal actions during 1990, 1992, 1994, and 1995.

Petitioner had a contentious and convoluted relationship with the O'Malleys. Petitioner sued the O'Malleys twice during 1990 for breach of contract. In one suit he received a $2,970 judgment, which was satisfied in the amount of $3,256.34, including interest. The other case was dismissed for want of prosecution and refiled in 1994. Also during 1990, petitioner was convicted of grand theft and forgery on account of his wrongfully charging more than $3,000 on Mr. O'Malley's business

account.  As part of a plea bargain, a restraining order was entered barring petitioner from contact with Mr. O'Malley, his family, or his business.  Likewise, during 1991, Mr. O'Malley was convicted for solicitation of petitioner's murder.

During 1991, petitioner again sued Mr. O'Malley for wages as an employee and subcontracting fees.  Mr. O'Malley settled for $2,100.  During 1992, petitioner reportedly sued his own business entity, which was a corporation, and a $5,200 judgment (plus costs) was entered in his favor.  Mrs. O'Malley was listed as a garnishee in that proceeding.  From 1993 to the time of trial of this income tax case, various police reports reflected that Mrs. O'Malley and her children made complaints about petitioner on account of his alleged physical attacks or verbal threats.

The distribution report of the O'Malley bankruptcy reflected that petitioners had filed claims in the amounts of $5,285, $139,000, $5,000,000, $6,551.08, and $142,765.83, all of which were disallowed.

Petitioner filed for bankruptcy during October 1998.  In his bankruptcy filing, petitioner designated that the value of the claims he had filed in the O'Malley bankruptcy was zero and that his stolen equipment had a value in excess of $25,000. Petitioner was discharged from his bankruptcy on February 25, 1999.

Respondent examined petitioners' 1999 Federal income tax return and requested substantiation of the deductions claimed on the Schedule C.  Petitioners failed to offer substantiation, and on May 25, 2001, respondent issued a statutory notice of deficiency disallowing the Schedule C deductions, including the claimed "bad debts".

OPINION

Petitioner, on a Schedule C attached to petitioners' joint Federal income tax return, reported no income and claimed deductions nearly equaling the amount of their wages reflected on Forms W-2, Wage and Tax Statement.  The claimed deductions must be tested under sections 162(a), 165(a) and (c), and 166(a)(1).  We first address the section 162 deductions.

Section 162(a) provides deductions for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business".  Deductions are strictly a matter of legislative grace, and taxpayers must comply with specific requirements for any deduction claimed.  INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992).  Respondent determined that petitioners failed to substantiate the claimed deductions and/or to show that they were incurred in a trade or business.[2]

_____

[2] No question has been raised with respect to the burden of proof under sec. 7491(a).

A taxpayer is required to maintain sufficient records to establish the amounts of income and deductions. Sec. 6001; Higbee v. Commissioner, 116 T.C. 438, 440 (2001); sec. 1.6001-1(a), Income Tax Regs. Petitioners have failed to provide any substantiation to respondent or to this Court in support of the claimed deductions for the $12,374 in car and truck expenses, $420 in legal and professional services, $116 in office expenses, $299 in vehicle or equipment rent, $357 in supplies, $1,655 in taxes and licenses, $312 in travel, $2,018 in meals and entertainment, $4,046 in utilities, and $1,625 in other expenses.

In addition to failing to substantiate the above expenses, petitioners have failed to show that any were incurred in a trade or business. See Kornhauser v. United States, 276 U.S. 145, 153 (1928); O'Malley v. Commissioner, 91 T.C. 352, 361 (1988), affd. 972 F.2d 150 (7th Cir. 1992). Petitioner was engaged in a trade or business in some years prior to 1999, but the record does not show that petitioner was engaged in a trade or business during 1999.

In addition, with respect to the $312 in travel, $12,374 in car and truck expenses, and $2,018 in meals and entertainment, petitioners are subject to the requirements of section 274. Section 274(d)(4) provides that such deductions are not allowed

> unless the taxpayer substantiates by adequate records
> or by sufficient evidence corroborating the taxpayer's
> own statement (A) the amount of such expense or other
> item, (B) the time and place of the travel,

> entertainment, amusement, * * * (C) the business
> purpose of the expense or other item, and (D) the
> business relationship to the taxpayer of persons
> entertained * * *

As with the other business expenses, petitioners did not submit or offer any substantiation. Accordingly, petitioners are not entitled to the section 162 deductions claimed on the Schedule C.

On their Schedule C, petitioners also claimed a $58,067 section 166 bad debt loss, which allegedly includes the theft of business equipment and unpaid amounts owed to petitioner for his services.

The record does not reflect, with any specificity, the portion of the $58,067 attributable to the theft or unpaid obligations for services. Any theft loss would be covered under section 165, whereas any business bad debt would be covered under section 166.

On their bankruptcy petition, petitioners listed the loss from the equipment theft as an amount in excess of $25,000. The record (in particular the police reports) reflects that the claimed equipment thefts occurred almost 10 years before the taxable year under consideration (1999). In that regard, theft losses are allowable in the year sustained and are treated as sustained in the year the taxpayer discovers the loss. Sec. 165(c)(3), (e); sec. 1.165-8(a)(1) and (2), Income Tax Regs. Accordingly, petitioners would not be entitled to claim the

losses described in the police reports.  There is no evidence in this record which shows a theft loss was sustained during 1999.

Section 166(a)(1) authorizes a deduction for a business bad debt that becomes worthless during the year.  To be entitled to the deduction, petitioners must prove (1) that a bona fide debt was created obligating the debtor to pay a fixed or determinable sum of money, (2) that the debt was created or acquired in proximate relation to a trade or business, and (3) that the debt became worthless in the year claimed.  United States v. Generes, 405 U.S. 93, 96 (1972); Calumet Indus., Inc. v. Commissioner, 95 T.C. 257, 284 (1990).  A debt is bona fide if it arose "from a debtor-creditor relationship based upon a valid and enforceable obligation to pay a fixed or determinable sum of money."  Sec. 1.166-1(c), Income Tax Regs.

The debts petitioners claimed are for unpaid fees for petitioner's services.  Petitioners used the cash method for reporting income and deductions; therefore, fees for services that remain unpaid have not been included in income.  Such debts do not constitute "bad debts" within the meaning of section 166 for which a deduction for worthlessness may be claimed.  See Gertz v. Commissioner, 64 T.C. 598, 600 (1975).

With respect to any of the claimed "bad debts" that are not attributable to unpaid claims for services, petitioners have not shown that there were debt obligations or that they became

worthless during 1999.  Cimarron Trust Estate v. Commissioner, 59 T.C. 195 (1959); Flood v. Commissioner, T.C. Memo. 2001-39. Although petitioners claimed the loss in 1999, the record shows that petitioners deemed the debt worthless as of October 1998, when petitioner filed his bankruptcy petition.  Accordingly, petitioners are not entitled to the business bad debt deduction.

As we have found that petitioners are not entitled to their claimed deductions, we consider next whether petitioners are liable for a section 6662 accuracy-related penalty for negligence.  Section 6662(a) provides that if any portion of any underpayment is due to negligence, then a taxpayer will be liable for a penalty equal to 20 percent of the underpayment of tax required to be shown on the return that is attributable to the taxpayer's negligence.  Negligence is defined as "the lack of due care or failure to do what a reasonable and ordinarily prudent person would do" under the circumstances.  Niedringhaus v. Commissioner, 99 T.C. 202, 221 (1992).  "Negligence" includes the failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code and also includes any failure to keep adequate books and records or to substantiate items properly.  Id.; sec. 1.6662-3(b)(1), Income Tax Regs.

With respect to the accuracy-related penalty, respondent bears the burden of production.  Sec. 7491(c); Higbee v. Commissioner, 116 at 446.  In that regard, respondent "must come

forward with sufficient evidence indicating that it is appropriate to impose" the accuracy-related penalty. Id. Respondent contends that he has met that burden. The record reveals that petitioners have failed to comply with the requirements of the Internal Revenue Code, including their failure to maintain adequate books and records and/or to substantiate the claimed business deductions.

A taxpayer may avoid the accuracy-related penalty by showing that (1) there was reasonable cause for the underpayment, and (2) he acted in good faith with respect to such underpayment. Sec. 6664(c)(1). Whether a taxpayer acted with reasonable cause and in good faith is determined by the relevant facts and circumstances, and most importantly, the extent to which he attempted to assess his proper tax liability. Sec. 1.6664-4(b)(1), Income Tax Regs.

Petitioners have offered no evidence to show that they kept adequate books or can substantiate their claimed deductions. Moreover, petitioners have not shown that there was reasonable cause for the underreporting of their 1999 tax liability. Accordingly, petitioners are liable for the section 6662(a) accuracy-related penalty.

To reflect the foregoing,

Decision will be entered

for respondent.