T.C. Memo. 2006-120

UNITED STATES TAX COURT

HECTOR PROWSE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 16562-03.                    Filed June 12, 2006.

Hector Prowse, pro se.

<u>Marc L. Caine</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MARVEL, <u>Judge</u>:  In a notice of deficiency dated July 31, 2003, respondent determined that petitioner was liable for an income tax deficiency of $5,797 with respect to his 2001 taxable year.  In a letter to this Court dated September 16, 2003, which we filed as an imperfect petition on September 23, 2003, petitioner stated his intention to appeal respondent's

determination for 2001 as well as determinations for 1999 and 2000 that petitioner alleged respondent had also made. By order dated September 29, 2003, we ordered petitioner to file a proper amended petition and to pay the required filing fee on or before November 28, 2003. On November 12, 2003, we received and filed petitioner's amended petition, which again sought a redetermination of deficiencies for 1999, 2000, and 2001.

On January 12, 2004, we filed respondent's motion to dismiss for lack of jurisdiction and to strike as to petitioner's 1999 and 2000 taxable years. After receiving an extension of time to object to the motion, petitioner filed no objection, and we granted the motion on April 16, 2004.

This case was originally calendared for trial at the New York, New York, trial session commencing on October 25, 2004. Following a conference call with the parties, we continued the case generally.

On April 21, 2005, we filed respondent's motion for leave to file amendment to answer to amended petition. In that motion, respondent acknowledged certain mistakes in the notice of deficiency and conceded that the correct amount of the income tax deficiency in the notice of deficiency should have been $5,196. In addition, respondent alleged that petitioner is liable for an "increased" deficiency of $5,784.14, for a total deficiency of

$10,980.14, and for a civil fraud penalty under section 6663(a).[1] Respondent alleged in the motion that the reasons for the increased deficiency and the civil fraud penalty were not evident when he filed his answer to the amended petition. Respondent further alleged that petitioner had received fair warning of respondent's intention to amend his answer and that petitioner had ample time to prepare for trial under the circumstances.

By order dated April 26, 2005, we directed petitioner to file a response to respondent's motion on or before May 10, 2005. No response was received by the deadline, so we granted respondent's motion and filed respondent's amendment to answer on May 19, 2005.

On June 1, 2005, we held a conference call with the parties to discuss petitioner's request for a continuance and respondent's request for a date and time certain for the trial. Respondent objected to the continuance on a variety of grounds including petitioner's failure to document a compelling medical reason for the request and his continuing failure to cooperate in preparing the case for trial. We denied petitioner's request without prejudice to petitioner's right to renew the request if petitioner could document a compelling reason for another continuance.

---

[1]All section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

On June 14, 2005, the case was called for trial.  Petitioner did not appear, although he had been in contact with respondent's counsel and with the Court in the days leading up to the trial. Instead, petitioner submitted a written motion for continuance in which he claimed that he had had a "heart attack seizure" on June 9, 2005.  However, despite repeated warnings from this Court to petitioner during various pretrial conference calls, he failed to attach any documentation of the episode or of a current medical condition sufficient to prevent him from appearing in Court on June 14.  We denied petitioner's motion.

When the case was called for trial on June 14, 2005, respondent orally moved under Rule 123(a) for a default judgment on the underlying deficiency.  We granted the motion with respect to the original deficiency as corrected by respondent but denied the motion with respect to the additional deficiency and the civil fraud penalty, matters on which respondent had the burden of proof.  Thereafter, a trial was held on June 14, 2005, to permit respondent to introduce evidence regarding the additional deficiency and the civil fraud penalty.

The issues for decision are:

(1) Whether respondent has satisfied his burden of proving by a preponderance of the evidence that petitioner is liable for an increased deficiency as alleged by respondent; and

(2) whether respondent has satisfied his burden of proving by clear and convincing evidence that petitioner is liable for the civil fraud penalty under section 6663(a).

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. We incorporate the stipulated facts into our findings by this reference. Petitioner resided in Flushing, New York, when his petition in this case was filed.

Petitioner's 2001 Return

During 2001, petitioner was employed by Keyspan Engineering Associates and by Cosentini Associates.

Petitioner filed a timely Federal income tax return for 2001 on which he reported the income he had earned from his employment during 2001. On Schedule A, Itemized Deductions, of his 2001 return, petitioner claimed itemized deductions of $31,449.06, and on Schedule C, Profit or Loss From Business, petitioner claimed a bad debt deduction of $20,000 and a deduction for legal expenses of $1,300. The Schedule A itemized deductions that petitioner claimed on his 2001 return consisted of the following:

| | | |
|---|---|---|
| Medical and dental expenses | $8,805.87 | |
|   Less:  adjustment | 3,428.96 | |
|     Net deduction | | $5,376.91 |
| State and local income taxes | | 4,097.60 |
| Charitable gifts | | 1,510.00 |
| Job expenses | 16,293.00 | |
| Tax preparation fees | 202.16 | |
| Other expenses | 3,055.00 | |
|   Less:  adjustment | 914.39 | |
| | | 20,464.55 |
|     Total itemized deductions | | [1]31,449.06 |

[1]Instead of subtracting the $914.39 adjustment, petitioner added the adjustment in calculating his total itemized deductions.  The mathematically correct total should have been $29,620.28.

Petitioner attached a statement to his 2001 return identifying the medical and dental expenses of $8,805.87 as follows:  Dr. Jayesh Patel ($350), emergency room treatment for left knee pain ($203.97), an operation ($5,900), Dr. Harvey S. Pallen ($900), and expenses for eyeglasses, medications, and transportation ($1,451.90).  Petitioner also attached to his 2001 return the following documentation of his medical expenses:  A receipt No. 07060 from Mount Sinai Elmhurst Faculty Practice dated March 9, 2001, for emergency care on 3/3/01, a receipt No. 308431 dated 4/28/01 for $130, a receipt No. 308434 dated 5/1/01 for $40, a bill from Xeron Clinical Laboratories dated 6/16/01 reflecting a handwritten entry by "Mary Patel" reading "Paid fully 6/20/01", a letter dated December 28, 2001 bearing the signature of "Mary S. Posner" and purporting to confirm that the

$5,900 cost for surgery performed at St. Luke's/Roosevelt Hospital on March 13, 2001, had been paid, and a receipt dated May 25, 2001, from Harvey S. Pallen, DDS, confirming treatment of petitioner on various dates in May 2001 for a total cost of $900. Each of the above-described documents was falsified, and some, if not all, of the signatures shown on the documents were forged. None of the documents substantiated any of petitioner's claimed medical expenses for 2001.

The charitable gifts claimed on the Schedule A consisted of an alleged cash gift to a church and a noncash contribution. The noncash contribution consisted of claimed donations of property to the Salvation Army during 2001. To document the contribution, petitioner attached receipt No. 414, dated December 13, 2001, purportedly from the Salvation Army, that listed 12 categories of property, assigned a value to each category, and listed the total contribution as $1,640. The receipt showed that the contribution was received by "Juanita Rusell" on December 13, 2001. The receipt was falsified and does not substantiate petitioner's claimed noncash contribution for 2001. Petitioner did not attach to his 2001 return any substantiation of his alleged cash gift to the church, and he did not substantiate the gift during the examination of his return.

The employee business expenses of $16,293 consisted of vehicle expenses ($12,948), parking fees, tolls, and

transportation ($720), classes ($2,300), and one-half of meals and entertainment expenses totaling $650 ($325). Petitioner attached to his 2001 return a copy of a letter from the New York City Public Schools confirming that petitioner had paid $2,300 for classes in asbestos and paint lead abatement. The letter purported to be signed by Robert Pardi and was dated July 1, 2001. Unfortunately, Mr. Pardi died on December 23, 1999, and could not possibly have written the July 1, 2001, letter. In addition, no such classes were offered by the New York City Public Schools during 2001.[2] With respect to the balance of the employee business expenses, petitioner was not required by either of his employers to incur travel or client entertainment expenses during 2001. Even if petitioner had incurred such expenses, each of his 2001 employers had reimbursement policies that entitled their employees to obtain reimbursement for any required business expenses.

To document the Schedule C legal expenses of $1,300 that he claimed on his 2001 return, petitioner attached to his 2001 return a letter dated May 15, 2001, from Michael E. Greenblatt, an attorney allegedly employed by Nixon, Hargrave, Devans & Doyle LLP. However, Mr. Greenblatt never worked for Nixon Hargrave,

---

[2]Similar documents were submitted to substantiate charitable contributions, medical expenses, and employee business expenses claimed on petitioner's 2000 return. At least some of those documents also appear to have been falsified.

and petitioner was never a client of the firm.  To compound the problem, petitioner submitted to respondent's counsel, on October 14, 2004, yet another letter to substantiate the $1,300 legal expense.  This letter, dated May 15, 2001, was purportedly prepared and signed by Paul Rubenfeld and purports to confirm that Mr. Rubenfeld represented petitioner before the United States Bankruptcy Court for the Southern District of New York for a fee of $1,300.  The Rubenfeld letter was falsified, and Mr. Rubenfeld's signature on the letter was forged.  Mr. Rubenfeld did not represent petitioner before the Bankruptcy Court at any time during 2001.

On a date that does not appear in the record, the Internal Revenue Service selected petitioner's 2002 and 2003 tax returns for examination.  On December 15, 2004, petitioner met with Revenue Agent Winslow, the agent who was assigned to conduct the 2002 and 2003 examination, and respondent's counsel to discuss petitioner's claim that he was entitled to deductions for 2001 and to review the documentation needed for the examination of petitioner's 2002 and 2003 returns.  During that meeting, petitioner admitted that he personally had prepared some of the third-party documentation that he had attached to his 2001 return.

Notice of Deficiency

In the notice of deficiency, respondent disallowed petitioner's Schedule C bad debt deduction of $20,000 and his Schedule C legal expense deduction of $1,300. As a result of these adjustments, respondent made a computational adjustment reducing petitioner's itemized deductions by $2,195 but did not otherwise disallow the itemized deductions petitioner had claimed on Schedule A. Respondent did not assert that petitioner was liable for any addition to tax or penalty.

Amendment to Answer

After respondent uncovered evidence that petitioner had overstated his Schedule A itemized deductions and had falsified documentation to substantiate his Schedules A and C deductions, respondent amended his answer to the amended petition to assert an additional deficiency of $5,784.14 (thereby increasing the total claimed deficiency for 2001 to $10,980.14[3]) resulting from the complete disallowance of petitioner's itemized deductions for lack of substantiation. Respondent also asserted for the first time that petitioner was liable for the fraud penalty pursuant to section 6663(a).

---

[3]In his motion, respondent conceded a computational mistake in calculating the original deficiency. The corrected original deficiency is $5,196.

OPINION

## I.  Burden of Proof

Normally, in a case before this Court, the taxpayer bears the burden of proof.[4]  Rule 142(a)(1).  However, if the Commissioner raises a new issue or seeks an increase in a deficiency, the Commissioner has the burden of proof as to the new issue or increased deficiency.  Id.  In addition, in any case involving the issue of fraud with intent to evade tax, the burden of proof in respect of that issue is on the Commissioner.  Sec. 7454(a); Rule 142(b).

In this case, the only open issues are issues as to which respondent concedes he has the burden of proof.  In order to satisfy that burden of proof, respondent must prove by a preponderance of the evidence that he properly disallowed petitioner's Schedule A deductions, and he must also prove by clear and convincing evidence that petitioner is liable for the fraud penalty under section 6663.  Rule 142.

## II.  Substantiation of Schedule A Deductions

### A.  Medical and Dental Expenses

Section 213(a) authorizes a taxpayer, if he itemizes his deductions, to deduct expenses paid during the taxable year for

---

[4]Although a taxpayer may contend that the burden of proof should shift to the Commissioner under sec. 7491, sec. 7491 does not shift the burden of proof in this case.  Respondent concedes that he has the burden of proof with respect to the only open issues--the increased deficiency and the fraud penalty.

the medical care of the taxpayer, the taxpayer's spouse, or a dependent to the extent that such expenses exceed 7.5 percent of adjusted gross income.  In this case, petitioner claimed an itemized deduction for unreimbursed medical and dental expenses of $8,805.87 on his 2001 return and attached documentation to his return purporting to substantiate the expenses.  When respondent issued his notice of deficiency, he did not disallow these expenses, although he did make a computational adjustment to the amount of the deduction because of adjustments affecting the calculation of petitioner's adjusted gross income.  However, after respondent discovered that some of the documentation attached to petitioner's 2001 return may have been falsified, respondent disallowed all of petitioner's Schedule A expenses, including his medical and dental expenses, for failure to substantiate, and he moved to increase the deficiency to reflect the disallowance.

At trial, respondent convincingly proved that the documentation attached to petitioner's 2001 return to document his medical and dental expenses had been falsified. Consequently, the record contains no credible evidence substantiating petitioner's medical and dental expenses for 2001, and we sustain respondent's determination.

B.  Taxes Paid

Petitioner claimed a deduction for State and local taxes paid of $4,097.60.  In his pretrial memorandum, respondent conceded that, if petitioner's allowable itemized deductions are greater than the standard deduction, petitioner is entitled to a deduction for the taxes paid.

C.  Charitable Contributions

Section 170(a)(1) generally authorizes a taxpayer to claim a deduction for any charitable contribution made during the taxable year.  On Schedule A to his 2001 return, petitioner claimed a charitable contribution deduction for cash gifts to a church ($690) and for noncash gifts ($820).  The only documentation produced by petitioner was a receipt, purportedly from the Salvation Army, regarding the noncash contribution.  At trial respondent convincingly proved that the documentation had been falsified.  Consequently, the record contains no credible evidence substantiating petitioner's charitable contributions for 2001, and we sustain respondent's determination.

D.  Unreimbursed Employee Business Expenses and Other
    Miscellaneous Expense

Section 162(a) authorizes a taxpayer to deduct ordinary and necessary business expenses paid or incurred during the taxable year in carrying on a trade or business.  An "ordinary" expense is one incurred in a transaction that commonly or frequently occurs in the type of business involved.  Deputy v. du Pont, 308

U.S. 488, 495 (1940). A "necessary" expense is one that is "appropriate and helpful" to the taxpayer's business. Welch v. Helvering, 290 U.S. 111, 113 (1933). Expenses allowable under section 162 must be "directly connected with or pertaining to the taxpayer's trade or business". Sec. 1.162-1(a), Income Tax Regs. Personal, living, and family expenses are not deductible. Sec. 262(a).

An employee is generally recognized as being in the trade or business of being an employee, and may deduct employment-related expenses if the requirements of section 162 are met. Commissioner v. Flowers, 326 U.S. 465 (1946). However, "A trade or business expense deduction is not allowable to an employee to the extent that the employee is entitled to reimbursement from his or her employer for an expenditure related to his or her status as an employee." Lucas v. Commissioner, 79 T.C. 1, 7 (1982). If an employee could have requested reimbursement under the plan and fails or forgets to do so, he may not claim a deduction for the expenses under section 162. Id.; see also Orvis v. Commissioner, 788 F.2d 1406 (9th Cir. 1986), affg. T.C. Memo. 1984-533; Kennelly v. Commissioner, 56 T.C. 936, 943 (1971), affd. without published opinion 456 F.2d 1335 (2d Cir. 1972).

In this case, petitioner claimed a deduction for unreimbursed employee business expenses totaling $16,293.

Although petitioner attached some documentation of these expenses to his 2001 return, respondent has convincingly demonstrated that the documentation was falsified and that several of the signatures thereon were forged. In addition, respondent introduced evidence at trial that petitioner admitted creating some of the documentation attached to his 2001 return, and he also convincingly established at trial that both of petitioner's employers had reimbursement plans to cover legitimate employee business expenses during 2001. The record made by respondent and the complete lack of credible evidence to substantiate petitioner's claimed employee business expenses convince us that respondent has met his burden of proving by a preponderance of the evidence that these expenses were properly disallowed.

With respect to the remaining miscellaneous expenses claimed on Schedule A, respondent has adequately demonstrated that petitioner has failed to substantiate the expenses as required by section 6001 and related regulations. See sec. 6001; sec. 1.6001-1(a), (e), Income Tax Regs. Consequently, we sustain respondent's determination disallowing the expenses.

III. Disallowance of Schedule C Deductions

A. In General

In his notice of deficiency, respondent disallowed petitioner's 2001 Schedule C expense deductions and computed the resulting income tax deficiency. When petitioner failed to

- 16 -

appear for trial, respondent moved for a default judgment, and we granted the motion with respect to the original deficiency as corrected. However, even if we had denied respondent's motion, we would still have concluded that respondent's determination disallowing petitioner's Schedule C expenses must be sustained. Our reasons are summarized below.

B.  Bad Debt Deduction

Section 166(a)(1) authorizes a taxpayer to deduct a business bad debt that becomes worthless during the year. To be entitled to the deduction, the taxpayer must prove (1) that a bona fide debt was created obligating the debtor to pay a fixed or determinable sum of money, (2) that the debt was created or acquired in proximate relation to a trade or business, and (3) that the debt became worthless in the year claimed. See United States v. Generes, 405 U.S. 93, 96 (1972); Calumet Indus., Inc. v. Commissioner, 95 T.C. 257, 284 (1990). A debt is bona fide if it arose "from a debtor-creditor relationship based upon a valid and enforceable obligation to pay a fixed or determinable sum of money." Sec. 1.166-1(c), Income Tax Regs.

In this case, petitioner claimed a bad debt deduction for compensation that he claimed he was entitled to but did not receive in connection with his participation in a joint venture with Thacker Engineering, Inc. (Thacker), beginning in approximately 1995. Petitioner, a cash basis taxpayer, did not

report any income from the joint venture on his Federal income tax returns for 1995-2000. On February 2, 1996, Thacker filed a voluntary petition for bankruptcy under chapter 11 with the United States Bankruptcy Court for the Southern District of New York. Petitioner filed a proof of claim with respect to the unpaid compensation he claimed was owed to him under the joint venture agreement with Thacker. Petitioner's claim was eventually discharged.

Worthless debts arising from claims of unpaid compensation are not deductible under section 166 unless the income in question was reported on the taxpayer's income tax return for the year for which the bad debt deduction is claimed or for a prior taxable year. See sec. 1.166-1(e), Income Tax Regs.; see also Gertz v. Commissioner, 64 T.C. 598, 600 (1975). In this case, petitioner did not report the income that is the subject of his bad debt claim on his 2001 return or on the return of any prior taxable year. Consequently, respondent properly disallowed petitioner's bad debt deduction.

C. Deduction for Legal Expenses

As explained earlier in this opinion, section 162 authorizes a taxpayer to claim a deduction for ordinary and necessary business expenses paid or incurred during the taxable year to carry on a trade or business. Petitioner claimed a deduction for legal expenses of $1,300 on his 2001 Schedule C and attached to

his return a letter purporting to substantiate the deduction. The letter was falsified. During the pendency of this case, petitioner submitted another letter from a different lawyer purporting to substantiate the deduction. That letter was also falsified. The record contains no other document to substantiate the expense. Respondent properly disallowed the deduction.

IV.  Fraud Penalty

Section 6663 authorizes the Commissioner to impose a 75-percent penalty on a taxpayer if any part of an underpayment is due to fraud. The Commissioner must prove a taxpayer's liability for the fraud penalty by clear and convincing evidence. Sec. 7454(a); Rule 142(b).

In order for the Commissioner to prove that a taxpayer is liable for the fraud penalty, he must establish that (1) an underpayment of tax exists, and (2) some part of the underpayment is due to fraud. DiLeo v. Commissioner, 96 T.C. 858, 873 (1991), affd. 959 F.2d 16 (2d Cir. 1992). Fraud is established by showing that the taxpayer intended "to evade tax believed to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of such tax." Recklitis v. Commissioner, 91 T.C. 874, 909 (1988).

The existence of fraud is a question of fact to be resolved upon consideration of the entire record. DiLeo v. Commissioner, supra at 874. Fraud is never presumed and must be established by

independent evidence of fraudulent intent. Beaver v. Commissioner, 55 T.C. 85, 92 (1970). Fraud may be shown by circumstantial evidence because direct evidence of the taxpayer's fraudulent intent is seldom available. Gajewski v. Commissioner, 67 T.C. 181, 200 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). The taxpayer's entire course of conduct may establish the requisite fraudulent intent. Stone v. Commissioner, 56 T.C. 213, 223-224 (1971).

Courts have relied upon a number of indicia or badges of fraud in deciding whether an underpayment of tax is due to fraud. See, e.g., Bradford v. Commissioner, 796 F.2d 303, 307-308 (9th Cir. 1986), affg. T.C. Memo. 1984-601; Clayton v. Commissioner, 102 T.C. 632, 647 (1994); Petzoldt v. Commissioner, 92 T.C. 661, 700 (1989). Although no single badge is necessarily sufficient to establish fraud, the existence of several badges of fraud constitutes persuasive circumstantial evidence of fraud. Petzoldt v. Commissioner, supra at 700.

Respondent contends that the following badges of fraud are present in this case: (1) Inadequate records, (2) providing implausible or inconsistent explanations of behavior, (3) pattern of behavior indicating an intent to mislead, and (4) filing false documents. We agree with respondent.

The record clearly and convincingly establishes that petitioner maintained inadequate records with respect to the

deductions claimed on his 2001 returns. Respondent clearly and convincingly proved that a substantial number of documents attached by petitioner to his 2001 return in an effort to convince respondent that his deductions were proper had been forged and falsified. Respondent also proved that petitioner submitted at least one other forged document during the pendency of this case. That document conflicted with another forged document that petitioner had attached to his 2001 return. Respondent elicited testimony at trial establishing that petitioner admitted preparing at least some of the forged documents. The totality of the evidence clearly and convincingly establishes that petitioner deliberately overstated his deductions for 2001 and falsified documents supporting the overstated and unsubstantiated deductions to mislead respondent and to evade his proper income tax liability for 2001.

Respondent has met his burden of proving that petitioner is liable for the fraud penalty, and, consequently, we sustain respondent's determination.

Decision will be entered under Rule 155.