T.C. Memo. 2006-147

UNITED STATES TAX COURT

JOSEPH AND MARLENE SCHNELL, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 3372-05.                    Filed July 10, 2006.

Joseph and Marlene Schnell, pro se.

<u>Theresa G. McQueeney</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, <u>Judge</u>:  Respondent determined deficiencies of $4,879,
$4,594, and $4,546 in petitioners' Federal income taxes for 2001,
2002, and 2003, respectively.  Respondent also determined
accuracy-related penalties under section 6662(a) of $975.80,
$906.60, and $909.20 for the years in issue, respectively.

After concessions by the parties, the issues for decision are:

(1) Whether petitioners are entitled to bad debt deductions of $34,500, $34,000, and $35,000, for 2001, 2002, and 2003, respectively;

(2) whether petitioners are entitled to deductions for advertising expenses of $1,500 and office expenses of $2,500 in 2001; and

(3) whether petitioners are liable for the accuracy-related penalties for the years in issue.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. Petitioners resided in Babylon, New York, at the time that they filed the petition.

During the years in issue, Joseph Schnell (petitioner) was a plumber, and Marlene Schnell (Schnell) (collectively, hereinafter, referred to as petitioners) was a legal secretary. Petitioners are cash basis taxpayers.

On March 31, 1986, petitioner incorporated Barad Plumbing Corp. (Barad) in the State of New York, County of Suffolk. Barad has never filed corporate Federal income tax returns. To date, Barad has not dissolved, but its status is listed by the NYS Department of State, Division of Corporations, as inactive.

Sometime after petitioner was licensed as a master plumber and incorporated Barad, he, as agent for Barad, entered into contracts with the City of New York (the City). Barad was later declared to be in default of those contracts. Barad ceased performing plumbing services around 1989.

Petitioners filed Form 1040, U.S. Individual Income Tax Return, for 2001 reporting Schnell's wages of $46,406 and claiming business losses of $38,500. On Schedule C, Profit or Loss From Business, for Barad, petitioner claimed $34,500 of bad debts, $1,500 of advertising expenses, and $2,500 of office expenses. A tax refund of $3,946, the amount of Federal income tax withheld from Schnell's wages for the year, was requested by petitioners.

For 2002, petitioners reported Schnell's wages of $48,461.91 and claimed business losses from bad debts of $34,000. A tax refund of $3,532, the amount of Federal income tax withheld from Schnell's wages for the year, was requested by petitioners. Similarly, for 2003, petitioners reported Schnell's wages of $50,587.63 and claimed business losses from bad debts of $35,000.

A tax refund of $3,653, the amount of Federal income tax withheld from Schnell's wages for the year, was requested by petitioners.

For each of the years in issue, the Schedule C for Barad reflected zero gross receipts and zero cost of goods sold. Therefore, petitioners did not report any gross income for Barad. It was the practice of petitioners, over many years (including the years in issue), to calculate and claim the amount of bad debt necessary in order to arrive at zero taxable income and to request a refund in the amount equal to Schnell's Federal income tax withholdings for that year. Petitioner did not consult any tax professional regarding his tax returns.

OPINION

Bad Debt Deduction and Advertising and Office Expense Deductions

Section 166(a) allows a deduction for "any debt which becomes worthless within the taxable year." However, worthless debts arising from unpaid wages, fees, and similar items of taxable income are not deductible as a bad debt unless the taxpayer has included the amount in income for the year for which the bad debt is deducted or for a prior tax year. See Gertz v. Commissioner, 64 T.C. 598, 600 (1975); sec. 1.166-1(e), Income Tax Regs.; see also Prowse v. Commissioner, T.C. Memo. 2006-120; Crosson v. Commissioner, T.C. Memo. 2003-170. "'It is well settled that a taxpayer is not allowed to reduce ordinary income actually received by the amount of income he failed to receive.'"

Ratcliff v. Commissioner, T.C. Memo. 1983-636 (citing Hendricks v. Commissioner, 406 F.2d 269, 272 (5th Cir. 1969), affg. T.C. Memo. 1967-140). Petitioners used the cash method for reporting income and deductions. Fees for services by Barad that allegedly were owed by the City have never been included in income, and unpaid amounts, even if earned, do not constitute "bad debts" within the meaning of section 166 for which a deduction for worthlessness may be claimed. See Crosson v. Commissioner, supra. Therefore, as a matter of law and without regard to the burden of proof, respondent properly disallowed the bad debt deductions for each of the years in issue.

In regard to the advertising and offices expenses, section 162(a) permits a deduction for all "ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business". Petitioners bear the burden of proving their entitlement to the claimed deductions. Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); see also Banker v. Commissioner, T.C. Memo. 1999-351. Taxpayers must establish that expenses deducted are ordinary and necessary and must maintain records sufficient to substantiate the amounts of the deductions claimed. Sec. 6001; sec. 1.6001-1(a), Income Tax Regs. If the taxpayers do not retain the required records and produce credible evidence, the burden of proof does not shift to respondent. Sec. 7491(a)(2)(A) and (B). Petitioners failed to

produce any evidence to substantiate the advertising and office expenses claimed by them.  Therefore, respondent properly disallowed the advertising and office expense deductions in 2001.

Section 6662(a) Accuracy-Related Penalty

Section 6662(a) imposes a penalty in an amount equal to 20 percent of the underpayment of tax attributable to one or more of the items set forth in section 6662(b).  Respondent asserts that the underpayment attributable to the disallowed deductions was due to negligence or disregard of rules or regulations.  See sec. 6662(b)(1).  Section 6662(c) defines "negligence" as including any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code and defines "disregard" as including any careless, reckless, or intentional disregard.  Negligence also includes a failure to keep adequate books and records or to substantiate items properly.  Sec. 1.6662-3(b)(1), Income Tax Regs.  Negligence is strongly indicated where "a taxpayer fails to make a reasonable attempt to ascertain the correctness of a deduction * * * on a return which would seem to a reasonable and prudent person to be 'too good to be true' under the circumstances".  Sec 1.6662-3(b)(1)(ii), Income Tax Regs.  Disregard of the rules and regulations is "careless" if the taxpayer does not exercise reasonable diligence to determine the correctness of a return position and is "reckless" if "the taxpayer makes little or no effort to

determine whether a rule or regulation exists, under circumstances which demonstrate a substantial deviation from the standard of conduct that a reasonable person would observe." Sec. 1.6662-3(b)(2), Income Tax Regs.

The section 6662(a) penalty is not imposed with respect to any portion of the underpayment as to which the taxpayer acted with reasonable cause and in good faith. Sec. 6664(c)(1); see also Higbee v. Commissioner, 116 T.C. 438, 448 (2001). The decision as to whether a taxpayer acted with reasonable cause and in good faith is made by taking into account all of the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. Relevant factors include the taxpayer's efforts to assess his or her proper tax liability, including an honest misunderstanding of fact or law that is reasonable in light of all of the facts and circumstances. Id.

Petitioner has made no argument that penalties should not be sustained. Petitioner argues:

> The Petitioner, over the years, would try many different ways to resolve his losses. This was a major mistake and a costly one on the Petitioner's part in learning that going against a municipal agency with unlimited funds is an impossible task, especially when you have no income. This is why the Petitioner started writing off his losses as a bad debt knowing the IRS [Internal Revenue Service] would pick it up and challenge his claims and provide the Petitioner with an avenue for a ruling by a U.S. court, granting the Petitioner the right to declare the City of New York a "bona fide debt".

Petitioner's statement is an admission that he knew that his claims were likely to be disallowed by the IRS.  He disregarded the applicable rules or regulations.  He never consulted a tax professional to determine whether his return position was correct.  We conclude that he knew that his claims were improper.  Therefore, the accuracy-related penalties for the years in issue are sustained.

We have considered the arguments of the parties that were not specifically addressed in this opinion.  Those arguments are either without merit or irrelevant to our decision.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155.</u>