DECISION
Plaintiffs appeals Defendant's Notices of Deficiency Assessment, dated May 12, 2009, for tax years 2005, 2006, and 2007. A trial was held in the Oregon Tax Courtroom, Salem, Oregon, on Wednesday, March 10, 2010. Jimmy D. Bain ("Jim") and Patricia L. Bain ("Patricia") appeared and testified on their own behalf.[1]
John Knieling (Knieling), Tax Auditor, appeared on behalf of Defendant.
 I. STATEMENT OF FACTS
Plaintiffs reported recreational gambling income and claimed gambling losses for tax years 2005, 2006, and 2007. (Def's Exs B-1.01, B-1.03, B-2.02, B-2.04, D-1.28, D-1.30.) Plaintiffs testified that their recreational gambling occurred primarily at one location, Spirit Mountain Casino; although Plaintiffs testified that also played video poker at various Elmer's Pancake Houses. *Page 2 
Plaintiffs testified that they received Form W-2G, Certain Gambling Winnings, as follows:
2005 $32,000
2006 $50,000
2007 $83,735

(Ptfs' Exs 2-1, 3-1 through 3-8, 8-4, 9-1 through 9-6, 15-3, 16-1 through 16-12.) Plaintiffs testified that in addition to the gambling winnings reported on the W-2Gs their "other winnings" were:
2005 $1,380
2006 $3,600
2007 $600

(Ptfs'Exs 2-1, 8-4, 15-3.)
Plaintiffs testified that they lost all their reported winnings and more. Plaintiffs submitted bank statements, cancelled checks, credit card withdrawal receipts, and "game cash guest receipts" to support their testimony that their losses were more than wins. (Ptfs' Exs 4, 5, 6, 7, 10, 11, 12, 13, 14, 17, 18.) The ink on some of the receipts submitted by Plaintiffs had faded and the receipts were illegible. (See, e.g., Ptfs' Exs 6-2, 6-3, 6-4.) For each tax year, Plaintiffs reported "losses" as follows:
Tax Year: 2005 2006 2007
 Game cash receipts $20,400.00 $12,900.00 $ 50,200.00*
 Checks $12,900.00 $26,300.00 $ 4,900.00**
 B of A Receipts $ 8,100.00 $18,000.00
 Visa Receipts $ 1,500.00 $ 7,860.00
 Cash from Wins $ 1,380.00 $ 7,600.00
 ATM withdrawals $-0- $-0- $ 72,500.00
 E Checks $-0- $-0- $ 14,100.00
Total $44,280.00 $72,660.00 $141,700.00
* "Game cash withdrawals * * * include
Visa/Mastercard/Debit"
** "B of A Checks"
 *Page 3 
(Ptfs' Exs 2-1, 8-4, 15-3.) Patricia testified that "H R Block" told "them to keep receipts" such as credit card bank withdrawals, and cancelled checks to prove the amount of money spent on gambling.
Plaintiffs testified that they "played computer slot machines." Jim testified that Plaintiffs' "average wager" was $3 to $5 and "one wager lasts a couple seconds." Patricia testified that an ATM withdrawal of $500 can "last 17 minutes" and they would withdraw between "$3,500 and $6,000" during a "gaming night." Patricia concluded that gambling is "an addiction." Jim testified that their gambling activity lasted an average of "10 or more hours" per visit. Patricia testified that they "did not eat at the casinos" and "soft drinks and coffee are free."
Plaintiffs submitted documents showing the refinance of their home in 2008 "to try to clear up debt on credit cards" and "2 large loans." (Ptfs' Ex 19-1.) Patricia testified that Jim had seven credit cards and she had four credit cards. The refinance of their home resulted in "net to borrower" of $40,068.05 ("`ESTIMATED'"). (Ptfs' Ex 19-5.) As of January 8, 2010, Jim's total credit card debt was $73,057.84. (Ptfs' Ex 19-6.) As of March 24, 2009, Patricia owed $24,192.34 to Capital One. (Ptfs' Ex 19-9.) Balance due on Patricia's Capital One account was $4,413.50 in July 2006 and $1,960.18 in December 2005. (Ptfs' Exs 19-10, 19-11.) As of February 2010, Patricia owed $19,065.80 to Bank of America for a visa signature credit card. (Ptfs' Ex 19-13.)
Knieling testified that he audited tax years 2005 and 2006 and denied all of Plaintiffs' reported losses from gambling because their "substantiation" did not meet the IRS guidelines. He testified that Plaintiffs do "not know what they spent or won" because they did not keep a "diary or log." Knieling testified that he opened "an audit for" tax year 2007 to give Plaintiffs *Page 4 
the benefit of the "tracking club card." He explained that Plaintiffs "used a casino tracking card for 2007." (Defs Ex D-1.00.) Knieling wrote in his audit summary:
 "Based on their [Plaintiffs'] 2007 tracking card data and W2-G's (sic) received I estimated their `dollars in' and `dollars out' amounts for 2005 and 2006 (10/3). Based on these estimations gambling income was increased and the deduction for gambling losses was increased."
(Id.) In making his computation, Knieling relied on the Spirit Mountain Casino 2007 Annual Activity Report, stating that Patricia's gaming activity was:
Totals: Dollars in: $232,779 Dollars Out: $211,722.92 Loss: $21,056.08
"* * * The above figures do not constitute a definite accounting of gaming activity nor do they denote total winnings or losses (only that which was accumulated while using your Coyote Club card.) The `Dollars In' figure may include winnings and may not be an accurate representation of investment. The win/loss amount shown above does not include any hand-paid jackpots. Please refer to the IRS form W2-G received with the jackpot[.] We suggest you give this information to your tax advisor and have them advise you on the best way to use this information."
(Def s Ex D-1.16.) The algebraic formula used by Mr. Knieling to compute Knieling's proposed adjustments for tax years 2005 and 2006 is set forth in a letter dated May 12, 2009, from Randy Robertson, Conference Officer, Personal Tax Compliance Division, Oregon Department of Revenue. (Def s Ex C-1.00 through C-1.07.)
Plaintiffs testified that they dispute whether the card is 100 percent accurate. They testified that many times they forgot to put the card in the machine or the card was not accepted and they lost two cards. Plaintiffs testified that "dollars in" included the "hand paid jackpots" that they spent to get winnings.
 II. ANALYSIS
"Gross income means all income from whatever source derived," including gambling. Internal Revenue Code (IRC) § 61;McClanahan v. United States,292 F2d 630, 631-632 (5th Cir 1961).[2] *Page 5 
Oregon has adopted the federal definition of taxable income, subject to exceptions not relevant to this case. ORS 316.048.[3]
In computing taxable income, "[l]osses from wagering transactions shall be allowed [as a deduction by a taxpayer] only to the extent of the gains from such transactions." IRC § 165(d). For individuals who are not engaged in the trade or business of gambling, gambling losses must be claimed as itemized deduction. IRC 63(a). On their filed federal income tax return, Plaintiffs limited their losses from gambling that they claimed as itemized deductions to their reported income from gambling. (Def's Exs B-2.02, B-2.04, D-1.23, D-1. 25, D-1.28, D-1.30.)
A taxpayer has the burden of providing substantiation for deductions, which "are a matter of legislative grace."Hartsock v. Commissioner (Hartsock), 2006-205, 2006 WL 2734238 at *3, citing Schooler v. Commissioner(Schooler), 68 TC 867, 869 [WL citation omitted] (1977) andINDOPCO, Inc. v. Commissioner,503 US 79, 84, 112 S Ct 1030, 117 L Ed 2d 26 (1992). With respect to the reporting of gambling winnings and gambling losses, the Internal Revenue Service issued general guidelines in Revenue Procedure 77-29. Rev Proc 77-29, 1977-2 CB 538. The Revenue Procedure outlines a taxpayer's "responsibility for maintaining adequate records in support of winnings and losses:" Id.
 "Under Section 6001 of the Code, taxpayers must keep records necessary to verify items reported on their income tax returns. Records supporting items on a tax return should be retained until the statute of limitations on that return expires.
 "An accurate diary or similar record regularly maintained by the taxpayer, supplemented by verifiable documentation will usually be acceptable evidence for substantiation of wagering winnings and losses. In general, the diary should contain at least the following information: *Page 6 
 1) Date and type of specific wager or wagering activity;
 2) Name of gambling establishment;
 3) Address or location of gambling establishment;
 4) Names(s) of other person(s) (if any) present with taxpayer at gambling establishment; and
 5) Amount(s) won or lost.
 "Verifiable documentation for gambling transactions includes but is not limited to Forms, W-2G; Forms 5754, Statement by Person Receiving Gambling Winnings; wagering tickets, canceled checks, credit records, bank withdrawals, and statements of actual winnings or payment slips provided to the taxpayer by the gambling establishment.
Id. (emphasis added). In a recent decision, the U.S. Tax Court reminded the petitioner that "[n]o valid reason exists for taxpayers engaged in wagering transactions not to maintain a contemporaneous gambling diary or gambling log." LaPlante v. Commissioner,98 TCM (CCH) 305, WL 3152789 at *6 (2009), citingSchooler at 870-871.
In such cases, the taxpayer has the "burden of showing that he is entitled to a particular deduction * * *." Betson v.Commissioner, 802 F2d 365, 367 (9th Cir 1986). The Ninth Circuit Court of Appeals has clearly stated that "[t]he question of the amount of [gambling] losses sustained by a taxpayer is a question of fact to be determined from the facts of each case, established by the taxpayer's evidence, and the credibility of the taxpayer and supporting witnesses." Norgaard v. Commissioner (Norgaard),939 F2d 874, 878 (9th Cir 1991), citing Green v.Commissioner, 66 TC 538, 545-46 (1976) acq. 1980-2 CB 1.
Most important, "[t]he credibility of the taxpayer is acrucial factor." Norgaard,939 F2d at 878. (emphasis added). A taxpayer's evidence can be corroborated by "forthright, credible and candid testimony."Norgaard, 939 F2d at 878 n3, citing Wolkomir v.Commissioner, 40 TCM (CCH) 1078, 1079-1080 (1980); see alsoDrews v. Commissioner, 25 TC 1354, 1355 (1956) *Page 7 
(allowing partial deduction based on taxpayer's credible testimony concerning estimate of losses without records), acq., 1956-2 CB 1; Taormina v. Commissioner,35 TCM (CCH) 400, 402 (1976) (allowing estimated partial deduction based on losing tickets and taxpayer's credible testimony).
The court now turns to the evidence offered by Plaintiffs to support their claimed gambling losses. Plaintiffs allege that the documentation they submitted to substantiate their claimed recreational gambling losses meets the general guidelines. Plaintiffs summarized their evidence, which included game cash receipts, check copies, bank statements, and cash withdrawals from automatic teller machines (ATM). Courts have questioned "the reliability of the self-serving and uncorroborated workpapers" produced to substantiate gambling losses. See Hartsock,92 TCM (CCH) 297, WL 2734238 at *4. Further, statements listing ATM credit card withdrawals prove that money was withdrawn, but do not prove that the money was spent and lost at a casino or other establishment offering gambling. Those statements in and of themselves are not sufficient to meet the IRS requirement of a diary or log. Defendant submitted Plaintiffs' 2005, 2006, and 2007 calendars, noting gambling days. On various dates, cash amounts were listed but not labeled as "amount(s) won or lost." Rev Proc 77-29.
Taxpayers are required to report gambling winnings as Other Income to arrive at adjusted gross income on their federal income tax returns. Gambling losses are reported as itemized deductions on Schedule A, Other Miscellaneous Deductions. Each item, gambling winnings and gambling losses, must be separately reported. On their federal income tax returns, Plaintiffs only listed as other income the gambling winnings reported on three W-2G forms issued by the casinos. (Def's Exs B-1.01, B-2.02, D-1.28.) Based on testimony, the court concludes that Plaintiffs received gambling winnings in addition to those reported on Form W-2Gs; however, *Page 8 
the amounts of those winnings were not reported on Plaintiffs' tax returns nor quantified for the court. Plaintiffs' testimony and lack of documents lead the court to conclude that Plaintiffs do not know the amount of their gambling winnings.
Plaintiffs reported gambling losses on Schedule A in the same amount as gambling winnings reported on the W-2 tax forms. (Def s Exs B-1.03, B-2.04, D-1.30.) Given Plaintiffs' reported gambling winnings and admitted additional casino hand paid jackpots, it is highly unlikely that there were no gambling losses. Knieling initially disallowed all gambling losses claimed by Plaintiffs for tax years 2005 and 2006. He subsequently computed gambling losses for each tax year, relying on a 2007 Coyote Club card issued to Patricia. (Def s Ex B-2.08, D-1.16.) Knieling's computation was based on a Spirit Mountain Casino 2007 Annual Activity Report, showing that for each $1 bet Plaintiffs lost their $1 bet plus approximately another 10 cents before payment of hand-paid jackpots. (Def s Ex D-1.116.) For each tax year, Knieling allowed gambling losses in excess of amounts identified by Plaintiffs as losses. For example, for tax year 2005, Plaintiffs totaled various receipts and ATM withdrawals to compute gambling losses in the amount of $44,280. (Ptfs' Ex 2-1.) Knieling computed gambling losses in the amount of $88,958. (Def s Ex B-2.08.) For tax year 2006, Plaintiffs computed gambling losses in the amount of $72,660. (Ptfs' Ex 8-4.) Knieling computed Plaintiffs' gambling losses in the amount of $138,997 (Def s Ex B-2.08.) For tax year 2007, Plaintiffs computed gambling losses in the amount of $141,700. (Ptfs' Ex 15-3.) Knieling accepted the amount ($232,779) shown on the annual activity report as Plaintiffs' 2007 gambling losses. (Def s Ex B-2.08.) Plaintiffs testify that they lost all their gambling winnings and that those amounts should be added to their computed losses. Even if Plaintiffs' gambling winnings are added to their computed losses, the *Page 9 
gambling losses computed and allowed by Knieling are in excess of Plaintiffs' combined gambling winnings and losses.[4]
Even though Plaintiffs might accept Knieling's computed gambling losses because Knieling's amounts exceed their reported losses, Plaintiffs dispute Knieling's computed gambling winnings. Using the same Coyote Club card, Knieling computed Plaintiffs' gambling winnings that did not include the hand-paid jackpots. (Def s Ex B-2.08.) Knieling's computed gambling winnings were:
Tax Year 2005 2006
Gambling Winnings $80,912 $126,424

(Def s Ex B-2.08) Knieling accepted the amount ($211,723) shown on the annual activity report as Plaintiffs' 2007 gambling winnings exclusive of hand paid jackpots. (Id.) Plaintiffs testified that each year their gambling losses exceeded their gambling winnings. Unfortunately, they offered no conclusive evidence to support their testimony and did not know the actual amounts of their total gambling winnings. In support of their credit card debt, which they attribute to gambling losses, Plaintiffs submitted home refinancing documents dated 2008. (Ptfs' Exs 19-1, 19-4, 19-5.) Plaintiffs allege that they refinanced their home to cover the debt arising from their gambling activities. In addition, Plaintiffs submitted credit card balance due amounts for various months in 2005, 2006, 2009, and 2010. (Ptfs' Exs 19-2, 19-3, 19-6, 19-9, 19-10, 19-11.) Plaintiffs provided no evidence to directly link the total credit card debt to their gambling losses. Plaintiffs failed to show that they only used their credit cards to finance their gambling activities. There was evidence to the contrary showing that Plaintiffs used their debit cards for various *Page 10 
personal expenses, including groceries, automobile supplies, restaurants, and other similar expenses.
 III. CONCLUSION
After carefully reviewing the evidence and applicable law, the court concludes that Plaintiffs failed to carry their burden of proof. There is insufficient evidence to support Plaintiffs' assertion that their gambling losses exceeded their gambling winnings. Plaintiffs are allowed the gambling loss deductions computed by Defendant for tax years 2005, 2006, and 2007. Defendant's computation of Plaintiffs' gambling income for tax years 2005, 2006, and 2007 is accepted. Now, therefore,
IT IS THE DECISION OF THIS COURT that Plaintiffs' appeal is denied.
Dated this day of June 2010.
If you want to appeal this Decision, file a Complaint in theRegular Division of the Oregon Tax Court, by mailing to:1163 State Street, Salem, OR 97301-2563; or by hand delivery to:Fourth Floor, 1241 State Street, Salem, OR.
 Your Complaint must be submitted within 60 days after the dateof the Decision or this Decision becomes final and cannot bechanged.
 This document was signed by Presiding Magistrate Jill A.Tanner on June 10, 2010. The Court filed and entered this documenton June 10, 2010.
[1] When referring to a party in a written decision, it is customary for the court to use the last name. However, in this case, the court's Decision recites facts and references to two individuals with the same last name, Bain. To avoid confusion, the court will use the first name of the individual being referenced.
[2] All references to the IRC and accompanying regulations are to the 1986 Code, and include updates applicable to tax years 2005, 2006, and 2007.
[3] All references the Oregon Revised Statutes (ORS) are to 2005.
[4]
Tax Year: 2005 2006 2007
Plaintiffs'combined gambling winnings and computed losses: 77,660 126,260 225,025
Knieling's computed gambling losses using the Coyote Club card: 88,958 138,997 232,779