Scheidelman v. Commissioner of Internal Revenue

**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

August Term, 2014

(Argued: May 22, 2014    Decided: June 18, 2014)

Docket No. 13-2650

- - - - - - - - - - - - - - - - - -x

HUDA T. SCHEIDELMAN,

Petitioner-Appellant,

- v.-

COMMISSIONER OF INTERNAL REVENUE,

Respondent-Appellee.

- - - - - - - - - - - - - - - - - -x

Before:          JON O. NEWMAN, DENNIS JACOBS, and JOSÉ A. CABRANES, Circuit Judges.

Taxpayer Huda T. Scheidelman appeals from a January 16, 2013, judgment of the United States Tax Court (Cohen, J.).  Scheidelman donated a façade conservation easement to the National Architectural Trust and claimed a

charitable deduction pursuant to Internal Revenue Code § 170(f)(3)(B)(iii). She argues that the Tax Court erred in finding that the easement had no negative impact on the value of her property. To the contrary, the Tax Court applied the correct legal standards, and its factual findings were supported by substantial evidence. We affirm.

FRANK AGOSTINO (with Tara Krieger on the brief), Agostino & Associates, P.C., Hackensack, NJ, for Appellant.

FRANCESCO UGOLINI (with Tamara W. Ashford and Patrick J. Urda on the brief), Tax Division, United States Department of Justice, Washington D.C., for Appellee.

Per Curiam:

Taxpayer Huda T. Scheidelman appeals from a January 16, 2013, judgment of the United States Tax Court (Cohen, J.). Scheidelman donated a façade conservation easement to the National Architectural Trust, and claimed a charitable deduction pursuant to Internal Revenue Code § 170(f)(3)(B)(iii). She argues that the Tax Court erred in finding that the easement had no negative impact on the value of her property. To the contrary, the Tax Court applied the

correct legal standards, and its factual findings were supported by substantial evidence. We affirm.

<strong>I</strong>

In 1997 Scheidelman paid $255,000 for a townhouse in Brooklyn's Fort Greene Historic District. The Fort Greene Historic District is designated (1) a "registered historic district" by the Secretary of the Interior through the National Park Service, pursuant to Internal Revenue Code ("I.R.C.") § 47(c)(3)(B); and (2) a historic district by New York City's Landmarks Preservation Commission (the "LPC"). In New York City it is unlawful to alter, reconstruct, or demolish a building in a historic district without the prior consent of the LPC. N.Y. City Admin. Code § 25-305.

On March 24, 2003, Scheidelman successfully applied to the National Architectural Trust (the "Trust"), an I.R.C. § 501(c)(3) organization, for her home to be considered for a "façade conservation easement" donation. On the Trust's recommendation, Scheidelman hired Michael Drazner, a qualified real estate appraiser, to value the donation. Drazner valued the easement at $115,000.

Generally speaking, there is no deduction for the contribution of a partial interest in property. See I.R.C. § 170(f)(3)(A). However, "Congress has created a tax benefit for taxpayers willing to donate property rights for conservation purposes, including the right to alter a property's façade." Scheidelman v. Comm'r, 682 F.3d 189, 192 (2d Cir. 2012) (citing I.R.C. § 170(f)(3)(B)(iii)). The deduction is available for the donation of a qualified conservation easement equal to "the fair market value of the [easement] at the time of the contribution." Treas. Reg. § 1.170A-14(h)(3)(I). Scheidelman claimed the $115,000 deduction on her federal tax return for tax year 2004.

After an audit, the Internal Revenue Service ("IRS") determined that Scheidelman had failed to establish a fair market value for the easement. Scheidelman sought a redetermination of her tax liability from the Tax Court, which ultimately found that Scheidelman was ineligible for the deduction because the Drazner appraisal was not a "qualified appraisal"--a prerequisite for deducting a noncash charitable contribution. See Scheidelman v. Comm'r, 100 T.C.M (CCH) 24, at *8-9 (2010); Treas. Reg. § 1.170A-13(c)(2)(i)(A).

On appeal, we vacated and remanded for a determination de novo of the fair market value of the easement. See Scheidelman, 682 F.3d at 198 ("[T]he

4

Drazner appraisal accomplishes the purpose of the reporting regulation: It provides the IRS with sufficient information to evaluate the claimed deduction and 'deal more effectively with the prevalent use of overvaluations.'") (citation omitted). As we emphasized, however, "[o]ur conclusion that Drazner's appraisal meets the minimal requirements of a qualified appraisal mandates neither that the Tax Court find it persuasive nor that Scheidelman be entitled to any deduction for the donated easement." Id. at 199.

On remand, the Tax Court determined that the easement did not diminish the fair market value of Scheidelman's property. This appeal followed.

**II**

We review the legal rulings of the Tax Court de novo and its factual determinations for clear error. See 26 U.S.C. § 7482(a)(1) ("The United States Courts of Appeals . . . shall . . . review the decisions of the Tax Court . . . in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury[.]"). "[W]e owe no deference to the Tax Court's statutory interpretations, its relationship to us being that of a district court to a

court of appeals, not that of an administrative agency to a court of appeals."

Scheidelman, 682 F.3d at 193 (citation omitted).

On the other hand, "Tax Court determinations of factual issues may only be overturned for lack of substantial evidence or if they are 'clearly erroneous.'" Wilson v. Comm'r, 500 F.2d 645, 649 (2d Cir. 1974). The Supreme Court has delineated the nature of this review:

> The Tax Court has the primary function of finding the facts in tax disputes, weighing the evidence, and choosing from among conflicting factual inferences and conclusions those which it considers most reasonable. The Circuit Courts of Appeal have no power to change or add to those findings of fact or to reweigh the evidence.

Comm'r v. Scottish Am. Inv. Co., 323 U.S. 119, 123-24 (1944).

We recognize that our powers of review on factual matters "particularly narrow when the issue is one of value." Sisto Fin. Corp. v. Comm'r, 149 F.2d 268, 269 (2d Cir. 1945). "Valuation is . . . necessarily an approximation[,]" and "[i]t is not necessary that the value arrived at by the trial court be a figure as to which there is specific testimony, if it is within the range of figures that may properly be deduced from the evidence." Silverman v. Comm'r, 538 F.2d 927, 933 (2d Cir. 1976) (citation omitted).

6

The Tax Court's conclusion--that the façade easement Scheidelman granted to the Trust did not reduce the fair market value of her house--must therefore be upheld if supported by substantial evidence.

**III**

"Fair market value is based on a hypothetical transaction between a willing buyer and a willing seller, and in applying this willing buyer-willing seller rule, 'the potential transaction is to be analyzed from the viewpoint of a hypothetical buyer whose only goal is to maximize his advantage . . . .'" Eisenberg v. Comm'r, 155 F.3d 50, 57 (2d Cir. 1998) (quoting Estate of Curry v. United States, 706 F.2d 1424, 1428-29 (7th Cir. 1983)); see also Treas. Reg. § 1.170A-1(c)(2).  For a conservation easement, the "before and after" valuation method is generally applied, which considers "the difference, if any, in the value of the property with and without the easement[.]"  Hilborn v. Comm'r, 85 T.C. 677, 688 (1985).  Among the relevant considerations is "any effect from zoning, conservation, or historic preservation laws that already restrict the property's potential highest and best use."  Treas. Reg. § 1.170A-14(h)(3)(ii).

"[O]rdinarily any encumbrance on real property, howsoever slight, would

tend to have some negative effect on that property's fair market value."

Scheidelman v. Comm'r, 105 T.C.M. (CCH) 1117, at *11 (2013) (quoting Evans v. Comm'r, 100 T.C.M. (CCH) 275, at *18 (2010)). But neither the Tax Court nor any Circuit Court of Appeals has held that the grant of a conservation easement effects a per se reduction in the fair market value. To the contrary, the regulations provide that an easement that has no material effect on the obligations of the property owner or the uses to which the property may be put "may have no material effect on the value of the property."[1] Treas. Reg. § 1.170A-14(h)(3)(ii). And sometimes an easement "may in fact serve to enhance, rather than reduce, the value of property. In such instances no deduction would be allowable." Id.

**IV**

Scheidelman relied on the opinions of (1) Michael Drazner, who prepared

---

[1] This is "especially" true if only a "simple façade easement[]" has been granted over a property "that ha[s] substantial market value because of [its] historic character." Hr'g before the Subcomm. on Oversight of the Comm. on Ways & Means, on Review the Tax Deduction for Façade Easements, 109th Cong., at 26 (2005) (statement of Paul W. Edmondson, Vice President & General Counsel of the National Trust for Historic Preservation).

8

the initial appraisal she had used in claiming the deduction on her tax returns, and (2) Michael Ehrmann, who prepared an appraisal for trial and testified as an expert witness. The Tax Court's conclusion that this evidence was entitled to no weight finds substantial support in the record.

The Drazner Report made no serious attempt to determine the "after" value of Scheidelman's property based on any factors actually related to the property. He selected a percentage decrease in value based on a range compiled from cases in which the IRS had allowed the deduction. As the Tax Court pointed out, however, the determination of fair market value depends on particular facts and circumstances, as to which Drazner offered no insight. Moreover, Drazner's opinion as to an IRS "accepted range" of values was legally unfounded. See, e.g., Nicoladis v. Comm'r, 55 T.C.M. (CCH) 624, at *21 (1988) (As to "whether the Court had established a '10-percent rule' in [Hilborn v. Comm'r, 85 T.C. 677 (1985)][:] We did not there and do not here. . . . [V]aluation itself is still a question of facts and circumstances."); Bruzewicz v. United States, 604 F. Supp. 2d 1197, 1207 (N.D. Ill. 2009) ("In a number of cases percentage reductions have been accepted to determine an easement's value based on qualitative factors that suggest such a value[.]") (emphasis added).

9

The Ehrmann Report, too, was inherently flawed: Ehrmann conceded (for example) that his report did not accurately describe the easement, that he relied on outdated information rather than contemporaneous inspection, and that he used comparables from other geographical areas. It was not error to find that Ehrmann's conclusions merited little or no evidentiary weight.[2]

In support of his proposed valuation (of zero), the Commissioner relied in part on a valuation expert, Timothy Barnes, who analyzed the particular terms of the easement, zoning laws, and regulations of the LPC. He also researched the neighborhood, including broker and buyer surveys. Ultimately, Barnes concluded that "in highly desirable, sophisticated home markets like historic brownstone Brooklyn, the imposition of an easement, such as the one granted on

---

[2] On February 12, 2013, the United States District Court for the Northern District of Ohio (Polster, J.) entered a permanent injunction barring Ehrmann and his firm, Jefferson & Lee Appraisals Inc., from preparing any further property appraisals for federal tax purposes. See United States v. Ehrmann, No. 1:13-cv-00214-DAP, 113 A.F.T.R.2d (RIA) 880, Agreed Order of Permanent Inj., ECF No. 11 (N.D. Ohio Feb. 12, 2013). (Ehrmann was allowed to continue "ongoing engagements for expert services in cases in which [he was] already retained[,]" including Scheidelman's. Id. at *3.) In United States v. Ehrmann, the Government alleged (inter alia) that "Ehrmann distorts data and provides misinformation or unsupported personal opinions to get artificially high values for" conservation-easement donations. Id., Compl. for Permanent Inj. & Other Equitable Relief ¶ 32, ECF No. 1 (N.D. Ohio Jan. 30, 2013).

June 23, 2004, is not a deterrent to the free trade of such properties at fully competitive prices and does not materially affect the value of the subject property." J.A. 1626. Barnes' testimony and conclusions amounted to substantial evidence.

The Commissioner also presented expert testimony by Stephen D. Dinklage, an IRS engineer who used an alternative approach based on condemnation techniques to determine that the easement had no material effect on fair market value. The Tax Court did not clearly err in crediting this testimony.

Moreover, the Chairman of the Fort Greene Association (a witness for Scheidelman) explained that the Fort Greene Historic District, which provides guidelines to maintain the historic integrity of the District's façades, has "actually has created Fort Greene to what it is today. It's created — it's an economic engine for Fort Greene." Scheidelman, 105 T.C.M. (CCH) 1117, at *23. From this testimony the Tax Court drew the fair inference that "preservation of historic façades is a benefit, not a detriment, to the value of Fort Greene property." Id. at *24.

Other evidence Scheidelman presented was inherently flawed, or, at best, insufficient to render the Tax Court's findings clearly erroneous. In any event, the reports of Barnes and Dinklage, which addressed the relative burdens imposed by the easement and the applicable LPC regulations, support the Tax Court's finding that the easement was not appreciably more restrictive than those regulations. As the Trust assured one of Scheidelman's mortgagors (in seeking consent to the easement), "[a]s a practical matter, the easement does not add any new restrictions on the use of the property because the historic preservation laws of the City of New York already require a specific historic review of any proposed changes to the exterior of this property." J.A. 144.

In sum, substantial evidence supports the Tax Court's conclusion that the easement had no value for charitable contribution purposes.

**V**

Finally, we briefly address Scheidelman's argument that the Tax Court failed to shift the burden of proof to the Commissioner, and that this was error requiring remand.

Generally, deductions are a matter of legislative grace, and a taxpayer bears the burden of proving entitlement. INDOPCO, Inc. v. Comm'r, 503 U.S. 79, 84 (1992). Moreover, the Commissioner's determination of value is normally presumed correct, and the taxpayer bears the burden of proving that the determination is incorrect. Welch v. Helvering, 290 U.S. 111, 115 (1933). In certain situations, however, the burden of proof may be shifted to the Commissioner. Relevant here is I.R.C. § 7491, which shifts to the Commissioner the burden of proof on any factual issue that the taxpayer supports with credible evidence.

Congress enacted § 7491 to remove a perceived disadvantage experienced by taxpayers who litigate with the IRS. See S. Rep. No. 105-174, at 44 (1998). It did so by requiring that if both sides produce evidence and "the court believes that the evidence is equally balanced, [then] the court shall find that the Secretary has not sustained his burden of proof." Id. at 46. Accordingly, "courts have concluded that if the evidence is not 'equally balanced,' then there is no need to rule on whether the burden shifts to the IRS" pursuant to § 7491. Esgar Corp. v. Comm'r, 744 F.3d 648, 654 (10th Cir. 2014) (collecting cases).

For the purpose of this appeal we will assume without deciding that Scheidelman was entitled to § 7491's burden shift. However, we conclude that

§ 7491 is immaterial to the outcome on this record because, as set forth above, substantial evidence supports the conclusion of the Tax Court that the Commissioner's "position is the more persuasive, regardless of the burden of proof." Scheidelman, 105 T.C.M. (CCH) 1117, at *21.

***

For the foregoing reasons, we affirm.