JAMES L. DENNIS, Circuit Judge,
dissenting in part and concurring in part:
In my view, Part III.A.2.a of the majority opinion erroneously reverses the Tax Court’s holding that the conservation easements granted by the BCR Partnerships were not granted in perpetuity, as required by IRC § 170(h)(2)(c), and thus did not constitute qualified real property interests for which the Partners develop land that was initially protected by the easements simply by hips could claim $15.9 million in charitable contribution income tax deductions.[1] The majority opinion also applies an impermissibly lax standard when reviewing the claimed deduction, contrary to the Supreme Court’s instructions in INDOPCO, Inc. v. C.I.R., 503 U.S. 79, 84, 112 S.Ct. 1039, 117 L.Ed.2d 226 (1992), that tax deductions be “strictly construed” and that “the burden of clearly showing the right to the claimed deduction is on the taxpayer,” and creates a split with the Fourth Circuit by refusing the apply the rule established in Belk v. Commissioner, 774 F.3d 221 (4th Cir. 2014).
As an initial matter, we must be mindful of the well-established rule that tax deductions are a matter of legislative grace, and that they are therefore “strictly construed and allowed only as there is a clear provision therefor.” INDOPCO, 503 U.S. at 84, 112 S.Ct. 1039 (internal quotations and citations removed). Contrary to the-majority opinion’s assertion,[2] this rule applies with equal force to a deduction for the *561 donation of a conservation easement.[3] Belle, 774 F.3d at 225 (applying INDOPCO to the conservation easement deduction provision); see also Minnick v. C.I.R., 796 F.3d 1156, 1159 (9th Cir. 2015) (same); Scheidelman v. C.I.R., 755 F.3d 148, 154 (2d Cir. 2014) (same); Esgar Corp. v. C.I.R., 744 F.3d 648, 653 (10th Cir. 2014) (same).
The value of any qualified charitable contribution made during the taxable year is allowed as a deduction. § 170(a)(1). If the charitable contribution is of a partial interest in property—“an interest in property which consists of less than the taxpayer’s entire interest in such property”— the Code allows a deduction only in limited circumstances. § 170(f)(3)(A). One such circumstance exists if the donation qualifies as a “qualified conservation contribution.” § 170(f)(3)(B)(iii). The Code defines a “qualified conservation contribution” as “a contribution (A) of a qualified real property interest, (B) to a qualified organization, (C) exclusively for conservation purposes.” § 170(h)(1). The Code further provides that a “qualified property interest” includes “a restriction (granted in perpetuity) on the use which may be made of the real property.” § 170(h)(2)(C). As the Belle court convincingly reasoned, “[t]he placement of the article ‘the’ before ‘real property’ makes clear that a perpetual use restriction must attach to a defined parcel of real property rather than simply some or any (or interchangeable parcels of) real property.” 774 F.3d at 225 (citing American Bus Ass’n v. Slater, 231 F.3d 1, 4-5 (D.C. Cir. 2000)). Furthermore, the statutory requirement that “[i]n the case of contributions of property for which a deduction of more than $500*000 is claimed ... a qualified appraisal of such property” must accompany the tax return, 26 U.S.C. § 170(f)(11)(D), and the regulatory requirement that a donor of a conservation easement make available to the do-nee “documentation sufficient to establish the condition of the property,” Treas. Reg. § 1.170A-14(g)(5)(i), would be rendered meaningless if a donor were permitted to change the boundaries of the conservation easement after the donation was made and the deduction was claimed, see Belk, 774 F.3d at 226-27. Thus, “a conservation easement must govern a defined and static parcel.” Id. at 227. “[T]he Code requires a donor to grant an easement to a single, immutable parcel at the outsét to qualify for a charitable deduction.” Id. (footnote and emphasis omitted).
The easement at issue in the present case fails because the real property contributed to NALT is not subject to a use restriction in perpetuity. As in Belk, “[t]he *562 [e]asement purports to restrict development rights in perpetuity for a defined parcel of land, but upon satisfying the conditions in the [modification] provision, the taxpayers may remove land from that defined parcel and substitute other land.” 774 F.3d at 226. And contrary to the majority opinion’s assertion, this effect is more than merely de minimis. There is no time limit within which the homesite modifications must occur. There is no limit upon the distance or the number of times a homesite can be relocated within the outer boundaries of the tract. The forty-seven five-acre homesites that may be substituted with initially-protected land represent 6.69 percent of the 3,509-aere easement tract—a significant portion of the total. See Balsam Mountain Investments, LLC v. C.I.R., 109 T.C.M. (CCH) 1214, at *3 (T.C. 2015) (an easement is not a “qualified real property interest” of the type described in § 170(h)(2)(C) even where a modification provision allowed substitution for “only 5%” of the land initially subject to the easement). Because the easement does not govern a “defined and static” parcel of land, it does not constitute a “qualified conservation contribution” under § 170(h), and the Tax Court was correct in holding that the BCR Partnerships were not entitled to claim a deduction for the contribution. Belli, 774 F.3d at 226-27.
The majority opinion attempts to distinguish Belk. Respectfully, I find the attempted distinction unpersuasive. As the majority opinion correctly notes, “[t]he court in Belli reasoned that, because the donor of the easement could develop the same land that it had promised to protect, simply by lifting the easement and moving it elsewhere, it was not granted in perpetuity.” Op. at 553. The majority opinion states that the same concern is not implicated in the present case because “[o]nly discrete five-acre residential parcels, entirely within the exterior boundaries of the easement property, could be moved.” Id. at 9-10. I do not see how this distinction obviates the concern expressed by the Belli court: using the modification provision, the BCR Partnerships can lift the easement and swap the previously unprotected five-acre homesites for initially protected land, thereby converting conservation habitat into residential development.
In their opening brief, the BCR Partnerships likened the easements to “a slice of Swiss cheese,” with forty-seven five-acre homesites representing the holes. The “defined parcel of real property,” Belli, 774 F.3d at 225, to which the conservation easement initially attached is one particular slice of cheese, with holes in specific locations. And just like the holes in a slice of cheese are not themselves cheese, the forty-seven homesites are not a part of the land protected by the conservation easement. By permitting the BCR Partnerships to change the placement of the homesite parcels, the modification provision expressly permits the substitution of nonprotected land—land within the holes—for land that was originally protected by the easement. Such substitution changes what real property is subject to the easement. In other words, any modification produces a different slice of cheese with a different pattern of holes. This is precisely what the Fourth Circuit disallowed in Belle, See id. at 226 (“The Easement purports to restrict development rights in perpetuity for a defined parcel of land, but upon satisfying the conditions in the substitution provision, the taxpayers may remove land from that defined parcel and substitute other land.”). That the substitution occurs within the outer boundaries of the total 3,744-acre ranch tract makes no meaningful difference. Even if most of the initially-protected land will remain undeveloped, the easements do not *563 attach to in perpetuity to the initially defined pareel of real property. See id. at 225; see also Balsam Mountain Investments, LLC, 109 T.C.M. (CCH) 1214, at *3.
Similarly, the majority opinion’s reliance on the Conservation Easement Plan of Bosque Canyon Ranch is misplaced. We are bound to look at what the easement allows the parties to do, not what the parties actually plan on doing. See § 170(h)(2)(C) (a “qualified property interest” includes “a restriction (granted in perpetuity) on the use which may be made of the real property” emphasis added)); see also Belk, 774 F.3d at 226 (“The [e]asement purports to restrict development rights in perpetuity for a defined parcel of land, but upon satisfying the conditions in the [modification] provision, the taxpayers may remove land from that defined parcel and substitute other land.” (emphasis added)). A picture may be worth 10,000 words, but it cannot replace the plain language of the easements or the governing statutory and regulatory provisions. The terms of the easements would allow the limited partners to move the homesites anywhere within the outer boundaries of the ranch tract, subject to the NALT’s “reasonable judgment”; there is nothing in the modification provision that would stop the limited partners from later deciding that they would rather not be organized as a stereotypical subdivision and spread the sites across the tract or from deciding that they would prefer that the homesites be grouped in the northwest corner of the easement rather than the northeast. Furthermore, as I read section 3.21 of the easements, there is nothing to prevent a limited partner from seeking modification of his or her homesite even after a ranch home has been constructed. While the NALT could have grounds for declining to approve such a modification, it could also have reasons for not doing so. What is important is that the modification provision would allow such a change. Congress did not intend for possibly enormous tax deductions to be based on the likelihood of continued agreement between the donor-taxpayer and the non-profit donee as to the land designated as subject to the conservation easement; rather, it specifically and unequivocally required that a qualified conservation easement be perpetual. § 170(h).
Furthermore, I do not think that Commissioner v. Simmons, 646 F.3d 6, 9-11 (D.C. Cir. 2011), and Kaufman v. Shulman, 687 F.3d 21, 27-28 (1st Cir. 2012), which the majority opinion cites, are relevant to the case at hand. The modification provisions in Simmons and Kaufman allowed the donee trusts to consent only to physical modifications of the historic buildings’ facades. They did not permit modifications of the easements themselves, that is, changes to what property was protected. Unlike in Belk and in this case, the same real property in those cases remained protected in perpetuity. The majority opinion asserts that “the commonsense reasoning that [Simmons and Kaufman] espoused, i.e., that an easement may be changed to promote the underlying conservation interests, applies equally here.” Op. 553. But there is nothing in the record to suggest that the modification provisions in this case were designed to promote the underlying conservation interests. While the BCR Partnerships asserted at oral argument that the modification provisions could be used to move a homesite if the site’s original location was discovered to be the nesting grounds for an endangered bird, contrary to the majority opinion’s suggestion, the terms of the easement do not include any requirement that the modification serve conservation purposes. Instead, the provision merely requires that any modification “does not, in [the *564 NALT’s] reasonable judgment, directly or indirectly result in any material adverse effect on any of the Conservation Purposes.” This subprovision suggests that any modifications will more likely be made by, and for the benefit of, the BCR Partnerships and the homeowners rather than by- the NALT or for the benefit of conservation goals.[4]
Following Belk’s persuasive reasoning, and mindful of the Supreme Court’s direction that deductions be strictly construed, see INDOPCO, 503 U.S. at 84, 112 S.Ct. 1039, I must conclude that the easements at issue in this case did not comply with the requirement in § 170(h)(2)(C) that a defined parcel of real property be protected in perpetuity. Because Part III. A.2.a of the majority opinion directly and inexplicably conflicts with these principles, I respectfully dissent from that part.

%

Except as noted in the foregoing dissent and footnote 1, I concur in vacating the Tax Court’s judgment and in remanding for the purposes stated by the majority opinion.

. In support of its assertion that "the usual strict construction of intentionally adopted tax loopholes is not applicable to grants of conservation easements made pursuant to § 170(h),” the majority opinion notes that the provision was adopted "by an overwhelming majority of Congress.” Op. at 553. Never before has this court relied on the size or nature of the majority by which a statutory provision was passed in order to determine its scope.

. I am sensitive to the majority opinion's implication that a broader interpretation of § 170(h) would assist conservation efforts by encouraging the donation of conservation easements. However, all tax deductions are designed to serve some public good and yet are narrowly and strictly construed. It is not our domain to decide that the goal served by this deduction is more important than that served by any other. See Battelstein v. Internal Revenue Serv., 631 F.2d 1182, 1185 (5th Cir. 1980) ("We note further that even were this Court of the opinion that there are ... equitable considerations in this case favoring the [taxpayers], it has long been established that we may not allow such considerations to play a part in our decision, As panels of this Court have recently had occasion to reiterate, citing recent and established Supreme Court precedent, tax deductions are matters of legislativgrace "and must be narrowly construed! ”); Dosher v. United States. 730 F.2d 375, 376 (5th Cir. 1984) ("[Tax deductions] are exclusively items of legislative grace. Deductions'in the code are not found by weighing or balancing equities; they are discovered by a parsing of the legislative language, and, in the case of an ambiguity, a review of the legislative history. Deductions are narrowly construed and the taxpayer bears the burden of proving entitlement.”).

. It appears to me that a swap of a homesite for a five-acre tract of initially-protected land would in most instances be detrimental to the purposes of the conservation easement. Because most of the homesites are grouped together as a typical residential subdivision, they are not as valuable for wildlife conservation purposes as land within the heart of the 3,744-acre tract.